IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| Vince Montemarano, | |
| *On behalf of himself and those similarly situated*, | Case No. 1:19-cv-2387 |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Master Group Enterprises, LLC | Jury Demand Endorsed Hereon |
| And | |
| Brian Corradi | |
| And | |
| Master Pizza Franchise Group, LLC | |
| And | |
| Michael LaMarca | |
| Doe Corporation 1-25; John Doe 1-25; | |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Vince Montemarano, on behalf of himself and similarly-situated individuals, brings this action against Defendants Master Group Enterprises, LLC, Brian Corradi, Master Pizza Franchise Group, LLC and Michael LaMarca, Doe Corporation 1-25, and John Doe 1-25 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on

Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages and overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), O.R.C. § 2307.60, and for unjust enrichment.

2.     Defendants Master Pizza Franchise Group, LLC and Michael LaMarca operate approximately ten (10) Master Pizza stores in northeastern Ohio collectively referred to herein as the "Master Pizza stores").  Master Group Enterprises, LLC and Brian Corradi operate the Master Pizza store in Medina, Ohio and four other Master Pizza stores.

3.     Plaintiff seeks to represent the delivery drivers who have worked at the Master Pizza stores.

4.     Defendants repeatedly and willfully violated the Fair Labor Standards Act, Section 34a, and the Ohio Prompt Pay Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

5.     All delivery drivers at the Master Pizza stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

6.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Ohio law claims.

2

8.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

### Plaintiff

9.     Plaintiff Vince Montemarano is a resident of Ohio and, at all times material herein, Plaintiff worked within the boundaries of Northern District of Ohio.

10.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA, Section 34a, and the Ohio Prompt Pay Act.

11.     Plaintiff has given written consent to join this action.

### Defendants

12.     Defendants operate the Master Pizza store in Medina, Ohio as joint employers.

13.     The determination of whether a person or entity is a "joint employer" is not made based on the labels or titles used by the putative employer. That Defendants claim to operate "franchises" is not relevant to whether they are employers under the FLSA and Ohio wage law.

14.     Defendants Master Pizza Enterprises, LLC owns and operates the Master Pizza franchise in Medina, Ohio and four other Master Pizza stores. Master Pizza Franchise Group, LLC is the franchisor that oversees operations at all Master Pizza stores.

15.     Master Pizza Enterprises, LLC and Master Pizza Franchise Group, LLC both exercise control over the work and working conditions of the delivery drivers at the Master Pizza store in Medina, Ohio and four other Master Pizza stores.

3

16.     Master Pizza Enterprises, LLC and Master Pizza Franchise Group, LLC benefit from the work of the delivery drivers at the Master Pizza store in Medina, Ohio and four other Master Pizza stores.

17.     The franchise entities act directly and indirectly in the interest of Master Pizza Franchise Group, LLC in relation to the delivery drivers at all of the Master Pizza the stores it operates.

18.     Master Pizza Enterprises, LLC and Master Pizza Franchise Group, LLC share control over the delivery drivers at the Master Pizza store in Medina, Ohio and four other Master Pizza stores.

19.     Master Pizza Franchise Group, LLC control the franchise entities that operate all of the Master Pizza stores.

20.     Formally and/or as a matter of practice, Master Pizza Enterprises, LLC and Master Pizza Franchise Group, LLC jointly determine, share, or allocate the power to direct, control, or supervise the delivery drivers, whether by direct or indirect means at the Master Pizza store in Medina, Ohio and four other Master Pizza stores.

21.     Formally and/or as a matter of practice, Master Pizza Franchise Group, LLC, together with their franchisees, jointly determine, share, or allocate the power to, directly or indirectly, hire or fire the worker or modify the terms or conditions of the worker's employment.

22.     Master Pizza Enterprises, LLC and Master Pizza Franchise Group, LLC and its franchisees have permanent, long term relationships.

23.     Formally and/or as a matter of practice, Master Pizza Enterprises, LLC and Master Pizza Franchise Group, LLC and its franchisees jointly determine, share, or allocate responsibility

4

over functions ordinarily carried out by an employer, such as handling payroll, providing workers' compensation insurance, paying payroll taxes, or providing the facilities, equipment, tools, or materials necessary to complete the work at the Master Pizza store in Medina, Ohio and four other Master Pizza stores.

24.     Brian Corradi founded Master Pizza Enterprises, LLC, and still owns all or part of it.

25.     Various entities, including Defendant Master Pizza Enterprises, LLC, have entered into franchise agreements with Master Pizza Franchise Group, LLC to operate Master Pizza stores.

26.     Master Pizza Franchise Group, LLC, and its various franchisees are joint employers of the delivery drivers at the Master Pizza stores.

27.     Michael LaMarca is the President and CEO of Master Pizza Franchise Group, LLC.

**Master Pizza Enterprises, LLC**

28.     Defendant Master Pizza Enterprises, LLC is a domestic corporation authorized to do business under the laws of Ohio.

29.     Master Pizza Enterprises, LLC operates the Master Pizza Franchise at 2736 Medina Road, Medina, OH 44256 and four other Master Pizza stores.

30.     Master Pizza Enterprises, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

31.     At all relevant times, Master Pizza Enterprises, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring,

firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

32.     Master Pizza Enterprises, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act.

33.     At all relevant times, Master Pizza Enterprises, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

**Master Pizza Franchise Group, LLC**

34.     Defendant Master Pizza Franchise Group, LLC is a domestic limited liability company authorized to do business under the laws of Ohio.

35.     Master Pizza Franchise Group, LLC is the entity that enters into franchise agreements with the various Master franchisees.

36.     Michael La Marca is the president and CEO of Master Pizza Franchise Group, LLC.

37.     Master Pizza Franchise Group, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

38.     Master Pizza Franchise Group, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

39.     At all relevant times, Master Pizza Franchise Group, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited

to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

40.　　Master Pizza Franchise Group, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act.

41.　　At all relevant times, Master Pizza Franchise Group, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

**Brian Corradi**

42.　　Defendant Brian Corradi is the founder and owner of Master Pizza Enterprises, LLC

43.　　Brian Corradi is individually liable to the delivery drivers at the Master Pizza stores under the definitions of "employer" set forth in the FLSA, OMFWSA, and Section 34a because he owns and operates the Master Pizza Enterprises, LLC store in Medina, Ohio, serves as a manager and/or member of Master Pizza Enterprises, LLC, ultimately controls significant aspects of the Master Pizza store's day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

44.　　Brian Corradi set in place all of the operational systems at the Master Pizza store in Medina, Ohio.

45.　　At all relevant times, by virtue of his role as founder, owner, and operator of Master Pizza Enterprises, LLC, Brian Corradi has had financial control over the operations at each of the Master Pizza store in Medina, Ohio and four other Master Pizza stores.

7

46.     At all relevant times, by virtue of his role as founder, owner, and operator of Master Pizza in Medina, Ohio and four other Master Pizza stores, Brian Corradi has a role in significant aspects of the Master Pizza stores' day to day operations.

47.     At all relevant times, by virtue of his role as founder, owner, and operator of Master Pizza in Medina, Ohio and four other Master Pizza stores, Brian Corradi has had control over the Master Pizza stores' pay policies.

48.     At all relevant times, by virtue of his role as founder, owner, and operator of Master Pizza in Medina, Ohio and four other Master Pizza stores, Brian Corradi has had power over personnel and payroll decisions at the Master Pizza stores, including but not limited to influence of delivery driver pay.

49.     At all relevant times, by virtue of his role as founder, owner, and operator of Master Pizza in Medina, Ohio and four other Master Pizza stores, Brian Corradi has had the power to hire, fire and discipline employees, including delivery drivers at the Master Pizza stores.

50.     At all relevant times, by virtue of his role as founder, owner, and operator of Master Pizza store in Medina, Ohio and four other Master Pizza stores, Brian Corradi has had the power to stop any illegal pay practices that harmed delivery drivers at the Master Pizza store.

51.     At all relevant times, by virtue of his role as founder, owner, and operator of Master Pizza store in Medina, Ohio and four other Master Pizza stores, Brian Corradi has had the power to transfer the assets and liabilities of Master Pizza Enterprises, LLC

52.     At all relevant times, by virtue of his role as founder, owner, and operator of Master Pizza store in Medina, Ohio and four other Master Pizza stores, Brian Corradi has had the power to declare bankruptcy on behalf of Master Pizza Enterprises, LLC.

8

53.     At all relevant times, by virtue of his role as founder, owner, and operator of Master Pizza store in Medina, Ohio and four other Master Pizza stores, Brian Corradi has had the power to enter into contracts on behalf of each of the Master Pizza stores.

54.     At all relevant times, by virtue of his role as founder, owner, and operator of Master Pizza in Medina, Ohio and four other Master Pizza stores, Brian Corradi has had the power to close, shut down, and/or sell the Master Pizza stores.

55.     Brian Corradi has influence over how the Master Pizza store in Medina, Ohio and four other Master Pizza stores can run more profitably and efficiently.

**Michael LaMarca**

56.     Defendant Michael LaMarca is the President and CEO of Master Pizza Franchise Group, LLC.

57.     Michael LaMarca is individually liable to the delivery drivers at the Master Pizza stores under the definitions of "employer" set forth in the FLSA, OMFWSA, and Section 34a because he owns and operates the Master Pizza store franchises and ultimately controls significant aspects of the Master Pizza stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

58.     Michael LaMarca runs the day-to-day operations of Master Pizza Franchise Group, LLC.

59.     At all relevant times, by virtue of his role as President and CEO of Master Pizza Franchise Group, LLC, Michael LaMarca has had financial control over the operations at each of the Master Pizza stores.

9

60.     At all relevant times, by virtue of his role as President and CEO of Master Pizza Franchise Group, LLC, Michael LaMarca has a role in significant aspects of the Master Pizza stores' day to day operations.

61.     At all relevant times, by virtue of his role as President and CEO of Master Pizza Franchise Group, LLC, Michael LaMarca has had control over the Master Pizza stores' pay policies.

62.     At all relevant times, by virtue of his role as President and CEO of Master Pizza Franchise Group, LLC, Michael LaMarca has had power over personnel and payroll decisions at the Master Pizza stores, including but not limited to influence of delivery driver pay.

63.     At all relevant times, by virtue of his role as President and CEO of Master Pizza Franchise Group, LLC, Michael LaMarca has had the power to hire, fire and discipline employees, including delivery drivers at the Master Pizza stores.

64.     At all relevant times, by virtue of his role as President and CEO of Master Pizza Franchise Group, LLC, Michael LaMarca has had the power to stop any illegal pay practices that harmed delivery drivers at the Master Pizza stores.

65.     At all relevant times, by virtue of his role as President and CEO of Master Pizza Franchise Group, LLC, Michael LaMarca has had the power to transfer the assets and liabilities of Master Pizza Franchise Group, LLC.

66.     At all relevant times, by virtue of his role as President and CEO of Master Pizza, Michael LaMarca has had the power to declare bankruptcy on behalf of Master Pizza Franchise Group, LLC.

67.     At all relevant times, by virtue of his role as President and CEO of Master Pizza, Michael LaMarca has had the power to enter into contracts on behalf of each of the Master Pizza stores.

68.     At all relevant times, by virtue of his role as President and CEO of Master Pizza, Michael LaMarca has had the power to close, shut down, and/or sell each of the Master Pizza stores.

69.     At all relevant times, by virtue of his role as President and CEO of Master Pizza, Michael LaMarca had authority over the overall direction of each of Master Pizza stores and was ultimately responsible for their operations.

70.     The Master Pizza stores function for Michael LaMarca's profit.

71.     Michael LaMarca has influence over how the Master Pizza stores can run more profitably and efficiently.

**Doe Corporation 1-25**

72.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also qualify as "employers" of Plaintiff and the delivery drivers at the Master Pizza stores as that term is defined by the FLSA and Ohio wage law.

73.     Specifically, the Master Pizza franchise locations are operated by separate legal entities, but are all controlled by Defendants' Master Pizza Franchise Group, LLC and Michael LaMarca's systems, policies, and practices.

74.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-25**

75.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Master Pizza stores as that term is defined by the FLSA and Ohio wage law.

76.     Specifically, the owners and operators of the various Master Pizza franchise locations are also "employers" of the delivery drivers employed at their locations.

77.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**Class-wide Factual Allegations**

78.     During all relevant times, Defendants Master Pizza Franchise Group, LLC and Michael LaMarca have operated the Master Pizza stores. Defendants Master Group Enterprises, LLC and Brian Corradi have operated the Master Pizza store in Medina, Ohio.

79.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Master Pizza stores.

80.     All delivery drivers employed at the Master Pizza stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

81.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Master Pizza store(s) checking out carryout customers, folding pizza boxes, cleaning up around the store, cutting pizza, preparing food in the kitchen, washing dishes, cutting vegetables, and taking care of other general tasks for the operation of the restaurant as necessary.

82.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked while completing deliveries.

12

83.    The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

84.    Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

85.    The delivery drivers at the Master Pizza stores work "dual jobs."

86.    Defendants require delivery drivers at Master Pizza stores to use their own cars to complete deliveries.

87.    Defendants require delivery drivers to maintain and pay for safe, legally operable, and insured vehicles for use in delivering Defendants' pizza and other food items.

88.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to gasoline, vehicle parts and fluids, vehicle repair and maintenance, servicing registration costs, financing, insurance, cell phone and data charges, finance charges, and depreciation.

89.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

90.    The Master Pizza stores reimburse their delivery drivers based on a per-delivery reimbursement policy that does not change depending on, for example, the number of miles driven by drivers to complete a delivery or the actual expenses incurred by the drivers.  The Master Pizza

13

store in Medina, Ohio reimbursed one dollar per delivery for part of the time that Plaintiff was employed and two dollars per delivery for the balance of the time that Plaintiff was employed.

91.     The Master Pizza stores do not track the delivery drivers' actual expenses.

92.     The Master Pizza stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

93.     The Master Pizza stores do not reimburse their delivery drivers based on their actual expenses.

94.     The Master Pizza stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

95.     The Master Pizza stores do not reimburse their delivery drivers based on a reasonable approximation of their expenses.

96.     Plaintiff and similarly situated delivery drivers approximately averaged twenty (20) miles per round-trip delivery.

97.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

        a.     2016: 54 cents/mile
        b.     2017: 53.5 cents/mile
        c.     2018: 54.5 cents/mile
        d.     2019: 58 cents/mile

98.     The delivery drivers at the Master Pizza stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

99.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Ohio law.

100.    Defendants Master Franchise Group, LLC and Michael LaMarca applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Master Pizza stores.

101.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

102.    Defendants have failed to properly take a tip credit from Plaintiff's wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

103.    Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit.

104.    Prior to taking a tip credit from their wages, Defendants did not inform Plaintiff and similarly situated delivery drivers of the amount of cash wage that would be paid to the delivery drivers.

105.    Prior to taking a tip credit from their wages, Defendants did not inform Plaintiff and similarly situated delivery drivers of the additional amount by which the wages of the delivery driver are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

15

106.    Prior to taking a tip credit from their wages, Defendants did not inform Plaintiff and similarly situated delivery drivers that all tips received by the delivery driver must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

107.    Prior to taking a tip credit from their wages, Defendants did not inform Plaintiff and similarly situated delivery drivers that the tip credit shall not apply to any employee who has not been informed of these requirements of 29 C.F.R.§ 531.59.

108.    Defendants have willfully failed to pay federal and Ohio state minimum wage to Plaintiff and similarly situated delivery drivers at the Master Pizza stores.

### Plaintiff's Individual Factual Allegations

109.    Plaintiff worked at the Master Pizza store in Medina, Ohio from August to September 2019.

110.    Plaintiff is paid minimum wage minus a tip credit as an hourly rate for all hours worked.

111.    When Plaintiff is not delivering food, he works inside the restaurant. His work inside the restaurant includes checking out carryout customers, folding pizza boxes, cleaning up around the store, cutting pizza, preparing food in the kitchen, washing dishes, cutting vegetables, and taking care of other general tasks for the operation of the restaurant as necessary.  Plaintiff was paid a tip credit wage rate of $6.50 for all hours worked both inside and outside the store.

112.    Plaintiff works dual jobs.

113.    Plaintiff's inside duties are not related to his delivery duties.

114.    Plaintiff was required to use his own car to deliver pizzas.

16

115.   Plaintiff was reimbursed either one or two dollars per delivery.

116.   Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

117.   Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete his job duties.

118.   Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

119.   Defendants do not track the actual expenses incurred by Plaintiff.

120.   Defendants do not reimburse Plaintiff based on his actual delivery-related expenses.

121.   Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

122.   Defendants did not reimburse Plaintiff based on a reasonable approximation of his expenses.

123.   Plaintiff regularly makes approximately 4 deliveries per hour during the hours he worked as a delivery driver.

124.   Plaintiff regularly drove approximately 20 miles per delivery.

125.   In 2019, for example, the IRS business mileage reimbursement has been $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas.

17

http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage rate, Defendants' policy under-reimbursed Plaintiff by approximately $.48-53 per mile ($.58-$.05 and $.58-.10). Considering Plaintiff's estimate of about 20 average miles per delivery, Defendants under-reimbursed him about $9.60 per delivery when he was reimbursed at $2/delivery ($.48 x 20 average miles), and $10.60 per delivery when he was reimbursed at $1/delivery.

126.    Defendants failed to properly inform Plaintiff of the requirements for taking a tip credit from his wages.

127.    Prior to taking a tip credit from his wages, Defendants did not inform Plaintiff of the amount of cash wage that would be paid to him.

128.    Prior to taking a tip credit from his wages, Defendants did not inform Plaintiff of the additional amount by which Plaintiff's wages are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

129.    Prior to taking a tip credit from his wages, Defendants did not inform Plaintiff that all tips received by him must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

130.    Prior to taking a tip credit from his wages, Defendants did not inform Plaintiff that the tip credit shall not apply to any employee who has not been informed of these requirements of 29 C.F.R. § 531.59.

131.    Defendants have also failed to properly take a tip credit from Plaintiff's' wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff they would be taking.

132.    Defendants have failed to pay Plaintiff minimum wage as required by law.

### Collective Action Allegations

133.    Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Master Pizza stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

134.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

135.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

136.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

137.    Defendants are aware or should have been aware that federal law requires them to meet certain requirements for taking a tip credit from the wages of their employees.

138.    Defendants are aware or should have been aware that federal law prohibits them from paying employees a tipped wage rate when they are working in a non-tipped capacity.

139.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

140.     The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

141.     The FLSA Collective members are readily identifiable and ascertainable.

142.     In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Class Action Allegations

143.     Plaintiff brings the Second, Third, Fourth, and Fifth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Master Pizza stores in the State of Ohio between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

144.     Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

145.     The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

146.     The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

147.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

148.    Notice can be provided by means permissible under Rule 23.

149.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

150.    There are more than 50 Rule 23 Class members.

151.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

152.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a, and O.R.C. § 4113.15.

153.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

154.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

155.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

156.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum

simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

157. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

158. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a. Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage and overtime;

b. Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c. Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

e. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

g. Whether Plaintiff and the Rule 23 Class completed non-tipped job duties for which they were paid a tipped wage rate;

h. Whether Plaintiff and the Rule 23 Class were properly informed of the requirements for taking a tip credit;

22

    i.    Whether Plaintiff and the Rule 23 Class were actually paid the wage rate they were promised by Defendants;

    j.    Whether Plaintiff and the Rule 23 Class conferred a benefit on Defendants that Defendants were aware of and accepted, and whether it would be unjust for Defendants to retain that benefit without compensating for it;

    k.    Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute"; and

    l.    The nature and extent of class-wide injury and the measure of damages for those injuries.

159.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

**Causes of Action**

**Count 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

160.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

161.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

162.    Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

163.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

23

164.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

165.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

166.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

167.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 2
### Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a
### (On Behalf of Plaintiff and the Rule 23 Class)

168.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

169.    Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

170.    Defendants ostensibly paid Plaintiff and the Rule 23 Class at or close to minimum wage for the hours they worked.

171.    Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

24

172.    By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

173.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

### Count 3
### Untimely Payment of Wages – O.R.C. § 4113.15
### (On Behalf of Plaintiff and the Rule 23 Class)

174.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

175.    During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

176.    O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

177.    By failing to pay Plaintiff and the Rule 23 Class all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

178.    Plaintiff and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

179.    In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

180.    As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

## Count 4
### Damages Pursuant to O.R.C. § 2307.60
### (On Behalf of Plaintiff and the Rule 23 Class)

181.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

182.    The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

183.    By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Class have been injured as a result.

184.    O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

185.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

## Count 5
### Unjust Enrichment
### (On Behalf of Plaintiff and the Rule 23 Class)

186.    The delivery drivers at the Master Pizza stores have conferred a benefit on Defendants by using their own cars to work for Defendants.

187.    Defendants are aware of and have accepted the benefit conferred on them by delivery drivers.

188. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the delivery drivers without commensurate compensation.

189. Plaintiff and the delivery drivers are entitled to equitable restitution of all unreimbursed expenses.

**WHEREFORE**, Plaintiff Vince Montemarano prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and his counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D. Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E. A declaratory judgment that the practices complained of herein are unlawful under Section 34a and O.R.C. § 4113.15.

F. An award of unpaid minimum wages and unreimbursed expenses due under Section 34a.

G. An award of damages under Section 34a, based on Defendants' failure to pay wages, calculated as an additional two times of back wages.

H. An award of restitution for unjust enrichment.

27

I.      Liquidated damages under O.R.C. § 4113.15.

J.      Compensatory and punitive damages under O.R.C. § 2307.60.

K.     An award of prejudgment and post-judgment interest.

L.     An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

M.    Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Andrew Kimble
Andrew R. Biller (Ohio Bar # 0081452)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (Ohio Bar # 0093172)
Louise M. Roselle (Ohio Bar # 14844)
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*lroselle@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

**JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Andrew Kimble
Andrew Kimble